In re Julien J. HOHENBERG, Debtor.

Sarah J. HOHENBERG, Plaintiff,

v.

Julien J. HOHENBERG, Defendant.

Bankruptcy No. 91–20777–B (mjn).
Adv. No. 91–0297.

United States Bankruptcy Court,
W.D. Tennessee, W.D.

July 10, 1992.

**482**

Bradley A. MacLean, Farris, Warfield & Kanaday, Nashville, Tenn., for plaintiff Sarah J. Hohenberg.

Robert D'Agostino, Law Office of William L. Norton, Jr., Atlanta, Ga., Elizabeth G. Ford, Wolff Ardis, Memphis, Tenn., for debtor.

William J. Landers, Martin, Tate, Morrow & Marston, P.C., Memphis, Tenn., for Bankers Trust Co.

Julie C. Chinn, Memphis, Tenn., Asst. U.S. Trustee.

Jack F. Marlow, trustee, Udelsohn, Blaylock & Marlow, P.C., Memphis, Tenn., for The Julien Co.

John W. McQuiston, III, Evans & Petree, Russell J. Hensley, Bogatin, Lawson & Chiapella, Memphis, Tenn., for Unsecured Creditors.

David J. Harris, Burch, Porter & Johnson, David J. Cocke, F. Guthrie Castle, C. William Denton, Borod & Kramer, Memphis, Tenn., for trustee.

MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S COMPLAINT REQUESTING RELIEF FROM THE AUTOMATIC STAY

WILLIAM H. BROWN, Bankruptcy Judge.

This cause [1] is before the Court on the complaint of the plaintiff, Sarah J. Hohenberg, requesting relief from the automatic stay and a determination of the parties' respective interests in their marital property. The plaintiff originally requested relief from the automatic stay in order to commence divorce proceedings against the debtor in state court. At issue is this Court's determination of the extent to which the state court may exercise jurisdiction over the issues involved in the parties' divorce proceedings. The following constitutes findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

The record reflects that the debtor voluntarily filed this Chapter 11 case on January 18, 1991. The plaintiff then filed this adversary proceeding on July 31, 1991, requesting that the automatic stay be lifted so that she could commence divorce proceedings against the debtor in state court. On August 28, 1991, this Court entered an order granting Mrs. Hohenberg relief from the stay, to the extent such relief was necessary, to permit her to begin a divorce action seeking divorce, alimony and child support. However, the Court ordered that the stay would remain in effect with respect to any action to determine the equitable division of marital property pending further order of the Court. Subsequently, on September 6, 1991, the debtor filed for divorce, *pro se*, in state court without obtaining leave of this Court. His divorce complaint prayed for, among other things, equitable division of the parties' marital property and debt. On November 27, 1991, this Court therefore ordered that the automatic stay with respect to any action to determine the equitable division of marital property would remain in effect pending further order and that the divorce action commenced by the debtor in state court would also be stayed pending further order. The Court then invited all parties in interest to submit memoranda concerning the relationship between Tennessee domestic relations law and bankruptcy law in this case.[2]

---

1. This proceeding is core pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (G), and (O).

2. *See* Sarah J. Hohenberg's Memorandum concerning her Motion to Lift Stay; Debtor's Memorandum concerning the Relationship of Tennessee Domestic Relations Law and Bankruptcy Law; Brief of Bankers Trust Company on behalf of the Creditors' Committee on Plaintiff's

Having studied each party in interest's brief, this Court must now determine the extent to which the stay may be lifted and to which the state court may exercise jurisdiction to resolve the following issues:

(1) Right to divorce, child custody and/or child visitation;

(2) Right to alimony, maintenance and/or support;

(3) Dischargeability of alimony, maintenance and/or support under 11 U.S.C. § 523(a)(5);

(4) Determination of and equitable division of "marital property" pursuant to Tenn.Code Ann. § 36–4–121(a) and (b);

(5) Enforcement of a state court judgment;

(6) Entry of a consensual property settlement agreement;

(7) Resolution of exemption issues; and

(8) Participation of the creditors in state court litigation.

## (1) RIGHT TO DIVORCE, CHILD CUSTODY AND/OR CHILD VISITATION

■ "There can be no doubt that the state court action as it pertains to divorce and the custody of the minor children should not be stayed." *Schulze v. Schulze,* 15 B.R. 106, 108 (Bankr.S.D. Ohio 1981). The jurisdiction to determine the right to and grounds for a divorce, along with a determination of custodial relationships, falls exclusively with the state court. *In re Palmer,* 78 B.R. 402, 405 (Bankr. E.D.N.Y.1987); *In re Cunningham,* 9 B.R. 70, 71 (Bankr.D.N.M.1981). *See In re Schock,* 37 B.R. 399, 400 (Bankr.D.N.D. 1984). However, "[t]he denial of jurisdiction over the divorce petition itself is not to deny jurisdiction over the property of the divorce proceeding when one of the parties is a debtor in bankruptcy, ..., and the ruling here is not to be construed to extend that far." *In re Cunningham,* 9 B.R. at 71. This Court therefore grants relief from the automatic stay, to the extent such

relief is necessary, to permit the parties to proceed with any divorce action by either the debtor or his spouse in state court seeking a divorce, child custody and/or child visitation.

## (2) RIGHT TO ALIMONY, MAINTENANCE AND/OR SUPPORT

■ The underlying obligations of "... alimony, support and maintenance are issues within the exclusive domain of the state courts." *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983). "The federal bankruptcy courts are obviously not empowered to create an obligation to support where it did not previously exist." *Id.* Moreover, 11 U.S.C. § 362(a) does not operate as a stay of any action to collect "alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2). Therefore, this Court grants relief from the automatic stay, to the extent such relief is necessary, to allow the parties to proceed with any divorce action by either the debtor or his spouse in state court seeking temporary or permanent alimony, maintenance and/or support from property that is not property of the bankruptcy estate. *See* 11 U.S.C. § 541.

## (3) DISCHARGEABILITY OF ALIMONY, MAINTENANCE AND/OR SUPPORT UNDER 11 U.S.C. § 523(a)(5)

■ Pursuant to 11 U.S.C. § 523(a)(5), an individual debtor is not discharged from any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a ... divorce decree ... or property settlement agreement...." *Id.; see generally* Brown, *The Impact of Bankruptcy On Alimony, Maintenance And Support Obligations: The Approach In The Sixth Circuit,* 56 TENN. L. REV. 507 (Spring, 1989). The state court has concurrent jurisdiction with the bankruptcy court to determine whether alleged alimony, maintenance or support is dischargeable. 11 U.S.C. § 523(c)(1); 28

Motion to Lift the Stay, *Hohenberg v. Hohenberg (In re Hohenberg),* Ch. 11 Case No. 91–20777–B, Adv. No. 91–0297 (Bankr.W.D.Tenn. filed May 14, 1992, February 27, 1992, and February 26, 1992, respectively).

U.S.C. § 1334(b); *In re Richards*, 131 B.R. 76, 78 (Bankr.S.D. Ohio 1991); *In re Rickman*, 79 B.R. 753, 756 (Bankr.W.D.Tenn. 1987). However, in this case an award of "support" obligations has not been made by a state court; and therefore, a decision regarding the dischargeability of such obligations is premature. *See In re Baker*, 75 B.R. 120, 121 (Bankr.D.Del.1987).

 This Court does note, though, that if dischargeability litigation is brought in state court, the *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983), factors for determining nondischargeability under § 523(a)(5) should be followed.[3] Additionally, this Court observes that if the debtor fails to raise the defense of dischargeability in the post-bankruptcy state court divorce proceedings, he may be precluded in this Court from litigating dischargeability. A bankruptcy court in the Southern District of Ohio recently held that where "a state court would be bound to accord *res judicata* effect to [a] state court decree, . . . ," the bankruptcy court is likewise bound. *In re Richards*, 131 B.R. at 78. *See In re Aurre*, 60 B.R. 621, 626–28 (Bankr. S.D.N.Y.1986). The Ohio Rules of Civil Procedure require that a party affirmatively raise the defense of "discharge in bankruptcy." Ohio R.C.P. § 8(c). The debtor in a post-petition divorce neglected to do so in state court; and therefore, the bankruptcy court was barred from considering the defense which could and should have been raised in the first suit in state court involving the same parties and issues. *In re Richards*, 131 B.R. at 78. *Accord Rosenbaum v. Cummings (In re Rosenbaum)*, Ch. 7 Case No. 91–32163–S, Adv. No. 91–3128 (Bankr.E.D.Tenn. June 10, 1992) (following *Richards*, but applying Virginia state law). Tennessee Rule of Civil Procedure 8.03, which would be applicable in the present case, also requires the defense of

"discharge in bankruptcy" to be pled affirmatively. Therefore, the same *res judicata* principles would apply in this Court.

In summary, a request for this Court to determine the dischargeability of future "support" obligations which have not yet been awarded is premature. Furthermore, the state court has concurrent jurisdiction to determine matters arising under § 523(a)(5) which therefore may preclude this Court from hearing dischargeability issues in this case.[4]

**(4) DETERMINATION OF AND EQUITABLE DIVISION OF "MARITAL PROPERTY" PURSUANT TO TENN. CODE ANN. § 36–4–121(a) AND (b)**

 Pursuant to Tenn.Code Ann. § 36–4–121(a)(1), Tennessee state courts may ". . . equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." *Id.* The state court therefore must classify the parties' property as either "marital property" or "separate property" under Tenn.Code Ann. § 36–4–121(b)(1) and (2). The classification and division of the marital estate are traditionally reserved for state courts. *In re White*, 851 F.2d 170, 173 (6th Cir.1988). However, where property of the bankruptcy estate is involved, the bankruptcy court has exclusive jurisdiction over this property unless the automatic stay is lifted pursuant to § 362(d). 11 U.S.C. § 541; 28 U.S.C. §§ 157(a), 1334(a). *See In re White*, 851 F.2d at 174; *In re Baker*, 75 B.R. at 121.

In Tennessee, "marital property" is defined as ". . . all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of the filing of a complaint for divorce, . . . , and including

3. The United States Supreme Court determined in *Grogan v. Garner* that the standard of proof for § 523(a) exceptions is "preponderance of the evidence." *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

4. The Court notes that it would be proper for a state court to hear these dischargeability issues because no time bar for the complaint to determine dischargeability exists. F.R.B.P. 4007(b) states that "[a] complaint other than under § 523(c) [§ 523(a)(2), (4) or (6) ] may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule."

any property to which a right was acquired up to the date of the final divorce hearing,...." Tenn.Code Ann. § 36–4–121(b)(1)(A). In the majority of cases dealing with the interrelationship of divorce and bankruptcy proceedings, the divorce complaint is filed prior to the bankruptcy case. In that situation, the law in the Sixth Circuit is clear that the definition of the debtor's interest in property must be made after reference to state law. *In re White*, 851 F.2d at 173. Until the state court classifies and equitably divides the marital property, what is property of the bankruptcy estate is unclear. *Id.* at 174. The Court of Appeals in *White* was persuaded that:

It is appropriate for bankruptcy courts to avoid invasions into family law matters "out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters."

*Id.* (quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir.1985)). *But cf. In re French*, 139 B.R. 476, 482–83 (Bankr. D.S.D.1992) (The Court concluded that it could retain authority to review any property disposition made by the state court.). In the normal case, the state court therefore defines what the debtor's rights are in the marital property and then the bankruptcy court exercises exclusive jurisdiction over the debtor's property which has become property of the bankruptcy estate. *In re White*, 851 F.2d at 173–174. The nondebtor spouse typically takes the marital property awarded to him or her free of the claims of the debtor spouse's creditors because the divorce was filed prior to creation of the bankruptcy estate. *See In re White*, 851 F.2d at 174.[5]

 The sequence of events in the present case, however, differs from that in *White* and therefore produces distinguish-

able interests to be protected. The voluntary Chapter 11 petition was filed by the debtor prior to the divorce complaint. *See supra*, at 484. The bankruptcy estate was created first, thereby making the property included subject to the debtor's creditors. *See* 11 U.S.C. § 541; *In re Elrod*, 91 B.R. 187, 189 (Bankr.M.D.Ga.1988). According to Bankers Trust Company's ("BTCo") argument on behalf of the unsecured creditors' committee, once the bankruptcy estate is created, the debtor loses any interest he held in property which has become property of that estate. *See* Brief of Bankers Trust Co. on behalf of the Creditors' Committee on Plaintiff's Motion to Lift the Stay at 6–7; Historical and Revision Notes to § 541. BTCo further argues that when the divorce action is filed post-petition, the only property in which the debtor has an interest and which may become "marital property" under Tenn.Code Ann. § 36–4–121(b)(1)(A) is that which is exempt or is accumulated post-petition. *See* Brief of Bankers Trust Co. at 7. Therefore, BTCo concludes that this is the sole property of the debtor which can be affected by the property division in this divorce proceeding. *Id.* at 7.

However, BTCo's view could produce harsh results for the nondebtor spouse, as the majority of the debtor's property could not be included in the marital estate to be equitably divided. This approach would encourage the parties to scheme against one another and/or the creditors with different outcomes depending on when, post-petition, the divorce was filed. If the divorce was filed post-petition, but pre-confirmation, the property in the bankruptcy estate would not become marital property. Yet, if the divorce was filed post-petition and post-confirmation, the debtor's property would have revested in the debtor pursuant to 11

---

**5.** The Sixth Circuit's approach differs from other courts which have held that the nondebtor spouse's interests in marital property, which had vested due to the pre-petition filing of divorce proceedings, were cut off by the bankruptcy filing where the rights were not fixed by a judgment or notice of *lis pendens*. The trustee could avoid the specific interests in the marital property under § 544; however, the nondebtor spouse's right to be compensated for a share of

the marital estate was not barred. The nondebtor spouse therefore was left with a general unsecured claim in the bankruptcy as opposed to taking the awarded share of the marital property free and clear of the debtor's creditors as in the Sixth Circuit. *See Perlow v. Perlow*, 128 B.R. 412, 415 (E.D.N.C.1991); *In re Tucker*, 95 B.R. 796, 798 (Bankr.D.Colo.1989); *In re Palmer*, 78 B.R. 402, 406 (Bankr.E.D.N.Y.1987); *In re Fisher*, 67 B.R. 666, 668–69 (Bankr.D.Colo.1986).

U.S.C. § 1141(b). The debtor would thus again possess interests in the property that would become part of the marital estate.

This Court does not wish to permit such varying effects on the nondebtor spouse who could be penalized and treated differently from the other unsecured creditors due to marriage to the debtor. This Court also does not believe that Congress intended such a result in creating an estate in § 541. BTCo is correct that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property *as of the commencement of the case ...*" 11 U.S.C. § 541(a) (emphasis added). *See* Brief of Bankers Trust Co. at 5. In addition, BTCo also agrees that when the divorce proceedings were filed, the debtor did have interests in property legitimately accumulated *post-petition*. *See* Brief of Bankers Trust Co. at 7. One of the debtor's post-petition interests is the equitable inchoate interest or right to have his legal and equitable interests revest in him on confirmation of the Chapter 11 plan under § 1141(b)[6] or on dismissal of the bankruptcy case under § 1112(b) or (e). 11 U.S.C. §§ 103(a); 349(b)(3). This inchoate right to revestment must necessarily be created post-petition because the debtor is not *divested* of his property until the commencement of the bankruptcy case. *See* 11 U.S.C. § 541(a). Finally, even though this inchoate interest is not yet vested, it may be considered part of the "marital property." According to Tenn.Code Ann. § 36–4–121(b)(1)(A), the marital estate is comprised of property owned when the divorce complaint is filed and also includes "any property to which a right was acquired up to the date of the final divorce hearing." *Id.* Neither the divorce complaint filing nor the final divorce hearing had occurred when the inchoate right to revestment was cre-

ated; and therefore, the inchoate right to revestment may be included in the marital estate. *See* Order, *Hohenberg v. Hohenberg (In re Hohenberg)*, Ch. 11 Case No. 91–20777–B, Adv. No. 91–0297 (W.D.Tenn. filed Nov. 27, 1992).[7] This Court notes that "marital property" in Tennessee constitutes both "legal [and] equitable interest[s] recognized at law or by equity in any kind of property ..." and concludes that the equitable interest of revestment may be just such an equitable marital property interest. *Jones v. Jones*, 597 S.W.2d 886, 887 (Tenn.1979).[8]

■ The debtor therefore possessed an after-acquired interest to have all of his property revest in him, except as otherwise provided for in a confirmed plan. This equitable interest may be "marital property" for purposes of the pending divorce proceedings. Therefore, the state court does not need to limit its valuation and classification of the debtor's property to property which is not part of the bankruptcy estate. Moreover, because it is appropriate for bankruptcy courts to defer to state courts in domestic matters, as previously stated, and because state courts have greater expertise in marital property classification and division, this Court may suspend its jurisdiction in order to allow the divorce court to classify and equitably divide the "marital property." *See In re White*, 851 F.2d at 173–74. This Court therefore further grants relief from the automatic stay for the limited purpose of allowing any adjudication and entry of judgment by the appropriate state divorce court concerning the property interests and obligations of the debtor and his nondebtor spouse.

6. "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b).

7. This Court notes that the debtor's inchoate right to revestment of property of the bankruptcy estate which would properly be classified as "separate property" under Tennessee domestic law can not be included in the "marital property." *See* Tenn.Code Ann. § 36–4–121(a), (b).

8. The valuation of equitable interests included in the "marital property" is left to the appropriate state divorce court, although this Court does suggest that the value of the debtor's inchoate interest in revestment of his property should presumably be equivalent to the actual value of the property in the bankruptcy estate which would be classified as "marital property," in the event of revestment.

## (5) ENFORCEMENT OF A STATE COURT JUDGMENT

■ Although the stay is lifted to permit adjudication of property rights and entry of a divorce decree concerning those rights, the automatic stay is continued with regard to enforcement of any state court judgment to the extent it awards property of the bankruptcy estate to anyone other than the debtor. The nondebtor spouse can not take any bankruptcy estate property given to her free and clear of the debtor's other creditors. Although the Sixth Circuit allowed the nondebtor spouse to do so in *White*, there the divorce had been filed prepetition, rather than post-petition as was done in this case. *In re White*, 851 F.2d at 171. The bankruptcy estate here was created first with the right to revestment forming subsequently. *See* 11 U.S.C. § 541(a). The nondebtor spouse's rights are therefore subject to the distributions and priorities of creditors under the Bankruptcy Code. *In re Elrod*, 91 B.R. at 189; *In re Palmer*, 78 B.R. 402, 406 (Bankr. E.D.N.Y.1987) (Divorce filed pre-petition, but court held equitable distribution rights vested post-petition and so were subject to creditors' claims.). Confirmation of the plan would not change that fact because the debtor's right to revestment and/or the property actually revested in him are both subject to the provisions for payment of the creditors in a confirmed plan and subject to the Court's confirmation of a plan. *See* 11 U.S.C. § 1129; 1141(b).

■ Furthermore, a nondebtor spouse's claims against specific property in a bankruptcy estate may be barred by § 544. Pursuant to that section, the trustee or debtor-in-possession[9] is given, as of the commencement of the case, the status of a hypothetical lien creditor and a hypothetical bona fide purchaser of real property from the debtor. 11 U.S.C. § 544(a), (b). *See In re Fisher*, 67 B.R. 666, 669 (Bankr. D.Colo.1986). "As such, [the] Trustee [or debtor in possession] may avoid any interest against property of the debtor that is not properly perfected and of which [the] Trustee [or debtor in possession] has no notice." *In re Elrod*, 91 B.R. at 189. For purposes of § 544, this Court must analyze the nondebtor's rights to specific property as if a bankruptcy had not been filed. *In re Tucker*, 95 B.R. 796, 799 (Bankr.D.Colo. 1989). In this case, if a judgment lien creditor had perfected its lien on the property on the date of this case's commencement, it would have taken free and clear of the nondebtor spouse's interests which vested subsequent to that perfection. The trustee's or debtor in possession's powers under § 544 supersede any interests the nondebtor spouse has or will acquire. 11 U.S.C. § 544. *See Perlow v. Perlow*, 128 B.R. 412, 415 (E.D.N.C.1991); *In re Elrod*, 91 B.R. at 189; *In re Fisher*, 67 B.R. at 669.

However, "[w]hile Section 544 may bar claims to specific property, that section does not bar the [nondebtor spouse's] right to be compensated from the husband's estate for the value of her share of the marital property." *In re Fisher*, 67 B.R. at 669.[10] This Court has exclusive jurisdiction to adjudicate all creditors' rights against

---

**9.** *See* 11 U.S.C. § 1107(a): "Subject to any limitations on a trustee ... a debtor in possession shall have all the rights, other than the right to compensation ... and powers, and shall perform all the functions and duties, ... of a trustee serving in a case under [chapter 11]"; and *see* § 1101(1): "debtor in possession' means debtor...."

**10.** BTCo cited *In re Tucker*, 95 B.R. 796 (Bankr. D.Colo.1989), for the proposition that the nondebtor spouse's post-petition § 546(b) notice, which she wished to substitute for a dissolution action and *lis pendens*, could not defeat the trustee's powers under § 544 and did not relate back to a prepetition date so that the nondebtor spouse did not have a right to a pre-petition

unsecured claim. *Id.* at 799. However, this case does not affect this Court's holding because it does not address the possibility of a *post-petition* unsecured claim where a divorce has been filed post-petition. *Tucker* does state though, consistent with this opinion, that if the trustee or judgment lien creditor perfected its lien prior to a divorce action and *lis pendens*, then the nondebtor spouse's rights would be subordinate to those of the trustee. Another bankruptcy court in the same district as the *Tucker* court has held that the nondebtor spouse would be left with a *post-petition* unsecured claim where her rights were not perfected pre-petition. *In re Tucker*, 95 B.R. at 796; *In re Fisher*, 67 B.R. 666, 669–70 (Bankr.D.Colo.1986).

property of the bankruptcy estate. "To the extent that the state matrimonial court adjudicates an equitable distribution in favor of the nondebtor spouse, such award becomes a claim within the context of 11 U.S.C. § 101[ (5) ]. The nondebtor spouse's claim is an entitlement against the debtor's estate, and thus she becomes one of the general unsecured creditors of the estate." *In re Palmer*, 78 B.R. 402, 406 (Bankr. E.D.N.Y.1987). *See In re Elrod*, 91 B.R. at 189; *In re Fisher*, 67 B.R. at 669. *But cf.* 11 U.S.C. § 101(10)(A). The Code does not give the nondebtor spouse any superior rights to distribution of property of the estate over other unsecured creditors; and therefore, "the bankruptcy court must supervise her entitlement in order to ensure the equality of distribution mandated by law." *In re Palmer*, 78 B.R. at 406.

Once the state court has made a determination as to the equitable distribution of the parties' marital property, the nondebtor spouse may enforce the judgment as to property not constituting the bankruptcy estate. *See* 11 U.S.C. § 541(a). However, for property awarded that constitutes the bankruptcy estate, she may file a proof of claim for the monetary value of her unsecured claim. The time for her to file such a claim in this case is hereby extended up to and including the sixtieth (60th) day after entry of a final divorce judgment. This Court shall then determine the allowable dollar value of any right of the nondebtor spouse in the property of the estate, giving due regard to findings of the state court with respect to the property's valuation. *See In re Palmer*, 78 B.R. at 407; *In re Fisher*, 67 B.R. at 669–70. This Court possesses the discretionary power under 11 U.S.C. § 105(a) to allow Sarah Hohenberg's post-petition claim, after giving notice and opportunity for hearing to the debtor, creditors, and affected parties.

 In summary, relief from the automatic stay is granted to permit adjudication and entry of judgment by the state court concerning the property interests of the parties. However, the stay remains in effect for any enforcement of those property rights and/or judgment as that enforcement affects property of the bankruptcy estate. To the extent the state court awards rights in property of the bankruptcy estate to the nondebtor spouse, she may have an unsecured claim for its monetary value to be determined and allowed by this Court, assuming the filing of a timely proof of claim, after notice and opportunity for objections to the allowance of her claim.

(6) ENTRY OF A CONSENSUAL PROPERTY SETTLEMENT AGREEMENT

 This Court's lifting of the automatic stay to allow adjudication in state court of the parties' property interests does not include authority to enter any form of consensual property settlement agreement between the parties which affects property of the bankruptcy estate without prior approval of this Court. An adjudication in state court will permit that court to fairly determine each party's property rights after having had an opportunity to hear from the debtor's creditors and to be made aware of the property division's effects on other parties' interests in this bankruptcy. *See In re White*, 851 F.2d at 174. Without a full hearing, the possibility of collusion between the parties exists. This Court is especially concerned because the debtor is representing himself *pro se* in the divorce proceedings. In addition, the bankruptcy court has exclusive jurisdiction over the property of the bankruptcy estate that would be affected. *See* 11 U.S.C. §§ 362, 541; 28 U.S.C. §§ 157(a), 1334(a). Therefore, this Court has the authority to condition relief from the stay and to order that the parties obtain this Court's approval regarding any form of consensual property settlement agreement involving property of the bankruptcy estate prior to its entry in state court. *See In re White*, 851 F.2d at 174 (No per se rule to lift the stay established in cases involving domestic relations when the bankruptcy court suspects collusion between the spouses.). If this Court accepts such an agreement, after notice and opportunity for hearing, then any right in property of the bankruptcy estate which has been awarded to the nondebtor spouse may be a general unsecured claim in this bankruptcy for an allowed amount to be determined by this Court as previously described.

## (7) RESOLUTION OF EXEMPTION ISSUES

 The state court is not required to stay the divorce proceedings in order to await final resolution of the debtor's claimed exemptions in bankruptcy. "Marital property" may include property of the bankruptcy estate, under the limits previously discussed, so the exemption determinations are not essential to the state court's action. *See supra*, at 484–486.

Furthermore, the nondebtor spouse has requested that if she is awarded marital property which is property of the bankruptcy estate and can not take free and clear of the debtor's creditors, then she be allowed to reserve the right to claim additional property as exempt. However, under § 522(b), only "an individual debtor may exempt from property of the estate...." *Id.*[11] Nevertheless, § 522(*l*) states that "[i]f the debtor does not file such a list [of claimed exemptions], a *dependent* of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor." *Id.* (Emphasis added). Section 522(a)(1) defines "dependent" as including a spouse, whether or not actually dependent. The nondebtor spouse could therefore have claimed property exempt if the debtor had failed to do so, but the debtor did file a list of claimed exemptions in this case. This Court has before it, for briefing and hearing, objections to some of the debtor's claimed exemptions.

In addition, pursuant to F.R.B.P. 1009(a), a debtor may amend as a matter of course at any time before the case is closed. After notice and an opportunity for hearing on motion of a party in interest, the Court may also order a list or schedule to be amended. F.R.B.P. 1009(a). However, there appears to be some disagreement on whether a nondebtor spouse can supplement an incomplete list of property exemptions where the debtor did file the list as required. *See* 11 U.S.C. § 522(*l*); *In re Homan*, 112 B.R. 356, 359–60 (9th Cir. BAP 1989) (Nondebtor spouse could not supplement incomplete list of property exemptions by debtor spouse, but even if § 522(*l*) were to be construed to permit supplementation, the additions "would be required to be consistent with those already claimed...."); *In re Crouch*, 33 B.R. 271, 273–74 (Bankr.E.D.N.C.1983) (Nondebtor spouse was allowed to supplement incomplete exemption list where the debtor omitted exemptions in bad faith and for the purpose of circumventing his spousal support obligations.). *See also* 3 *Collier on Bankruptcy* § 522.26 at 522–82—522–84 (15th ed. 1992). Nevertheless, since a motion concerning exempt property has not been filed by the nondebtor spouse, the issues of whether she can amend the exemptions and whether specific additional property should be classified as exempt are premature. This Court will rule on those questions at the time they arise. In addition, because amendments may be made up until the time the case is closed, Mrs. Hohenberg does not need to reserve any right that she *may* have to amend. *See* F.R.B.P. 1009(a).

## (8) PARTICIPATION OF CREDITORS IN STATE COURT LITIGATION

 BTCo, on behalf of the unsecured creditors' committee, has requested that creditors be allowed to participate in the Hohenbergs' divorce proceedings in order to protect the creditors' interests in the property of the bankruptcy estate. This Court agrees. A possibility of collusion between the Hohenbergs and against the debtor's other creditors will exist. This possibility is especially heightened due to the fact that the debtor is representing himself *pro se* in the divorce and the debtor might not understand the bankruptcy ramifications of his *pro se* divorce actions. Nevertheless, the danger to the creditors' interests from such a possible collusion is lessened because of this Court's ruling that an award of property of the bankruptcy estate to the nondebtor spouse will first be subject to the creditors' claims. *See supra*, at 486–488. However, if the equitable division by the state court awards the nondebtor spouse a majority of the property of the bankruptcy estate, she could possess a

---

**11.** Creditors may object to claimed exemptions of the debtor, but, absent amendments, the deadline for objections has passed. *See* 11 U.S.C. § 522(*l*); F.R.B.P. 4003(b).

very large unsecured claim in the bankruptcy which could subtract from the other unsecured creditors' claims.

Therefore, the unsecured creditors, including the Trustee in the related case, The Julien Company, should be allowed to participate in the state court discovery and litigation. *See generally In re The Julien Co.*, Ch. 11 Case No. 90–20283–B (Bankr. W.D.Tenn. filed Jan. 10, 1990). They can make the state court aware of the marital property division's effect on other parties' interests in this bankruptcy. This involvement should help to facilitate a fairer judgment for all. *See In re White*, 851 F.2d at 174.

This Court thus grants limited relief from the automatic stay to permit the unsecured creditors to participate in the divorce proceedings in state court. However, these creditors may only be involved in discovery and litigation which concern property of the bankruptcy estate. Any proceedings relating to the right to divorce, child custody, child visitation, alimony, maintenance and support from property which is not part of the bankruptcy estate should be kept private and closed to the creditors. Finally, in order to limit the number of parties and prevent confusion, the state court may, within its discretion, limit the unsecured creditors' involvement to one or more creditor representatives and may structure the divorce proceedings as it sees fit in order to maintain the separation between the private matters and the bankruptcy estate property issues.

IT IS THEREFORE ORDERED that on the complaint of the plaintiff, Sarah J. Hohenberg, this Court grants limited relief from the automatic stay, to the extent such relief is necessary, to permit the state divorce court to exercise jurisdiction over the following issues:

1. Right to divorce, child custody, and/or child visitation;

2. Right to alimony, maintenance and/or support from property that is not property of the bankruptcy estate;

3. Dischargeability of alimony, maintenance and/or support under 11 U.S.C. § 523(a)(5);

4. Determination of and equitable division of marital property pursuant to Tenn.Code Ann. § 36–4–121(a) and (b); and

5. Participation in the divorce proceedings by the unsecured creditors, limited to discovery and litigation which involve the property of the bankruptcy estate.

IT IS FURTHER ORDERED that the automatic stay shall remain in full force and effect and this Court shall exercise exclusive jurisdiction over the following issues:

1. Enforcement of a state court judgment to the extent it affects property of the bankruptcy estate;

2. Approval and entry of any consensual property settlement agreement;

3. Resolution of the debtor's claimed exemptions, for which the state court does not need to stay its proceedings; and

4. Amendment of the list of exemptions by the plaintiff, Mrs. Hohenberg, which is a premature issue at this time.

SO ORDERED.