COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Fitzpatrick and Senior Judge Duff
Argued at Alexandria, Virginia


NANCY J. BOGART
                                              OPINION BY
v.   Record Nos. 0645-94-4 and 1020-94-4   JUDGE LARRY G. ELDER
                                            NOVEMBER 28, 1995
WILLIAM C. BOGART


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
               Thomas S. Kenny, Judge (Record No. 0645-94-4)
              Jane Marum Roush, Judge (Record No. 1020-94-4)


              Thomas P. Mains, Jr. (Mains & Mains, L.C., on
              briefs), for appellant.

              (Stephen G. Cochran; Cochran & Rathbun, P.C.,
              on brief), for appellee.


     Nancy J. Bogart (wife) appeals the trial court's order

incorporating the parties' property settlement agreement and

awarding William C. Bogart (husband) attorney's fees.  Wife

contends (1) the trial court lacked jurisdiction to enter a final

equitable distribution decree on March 14, 1994, incorporating

terms of the parties' property settlement agreement, after a

federal bankruptcy court assumed jurisdiction over the matter and

declined to approve the agreement; and (2) the trial court

violated Rule 1:1 when, on May 20, 1994, it modified its

April 28, 1994 order more than twenty-one days after the order's

issuance.  We hold the trial court had jurisdiction to enter its

March 14, 1994 final equitable distribution order.  However,

because the trial court modified the order more than twenty-one

days after its entry, it lacked jurisdiction.  We therefore

affirm the trial court's order in case number 0645-94-4 and reverse the trial court's order in case number 1020-94-4.

## I.

### FACTS

Wife filed a bill of complaint for divorce on November 2, 1992, seeking a divorce from husband. The divorce was granted on November 22, 1993. When the parties separated, they owned several parcels of real estate as tenants by the entirety, each one encumbered by a deed of trust or mortgage. Following the parties' separation, husband stopped making mortgage payments on the properties, and the creditors began foreclosure proceedings.

On May 27, 1993, seeking bankruptcy protection from the creditors, wife filed a Chapter 11 petition with the United States Bankruptcy Court for the Eastern District of Virginia, and the bankruptcy court assumed jurisdiction over the matter. Assumption of jurisdiction included an automatic stay over the related state court proceedings, pursuant to 11 U.S.C. § 362(a).

On June 28, 1993, the parties executed a letter agreement resolving issues of equitable distribution and spousal support. Among the terms, wife agreed to transfer to husband her interests in the jointly titled property and to relinquish any claims to the property in exchange for husband's promise to assume responsibility for the debts and to indemnify wife.

On November 5, 1993, the bankruptcy court lifted its automatic stay and permitted the divorce suit "to proceed to its

2

conclusion, in the state courts, with this [bankruptcy] court retaining jurisdiction to determine the allowance of claims against the estate of [wife] as the estate shall be constituted pursuant to the Order of the State Courts." After receiving this permission to litigate the equitable distribution dispute in state court, wife requested the bankruptcy court to approve the agreement, arguing that without such approval, it was a nullity. On November 22, 1993, the bankruptcy court refused to approve the agreement's terms, ruling that the agreement was "not in the best interests of [wife] and her creditors."

On January 7, 1994, the parties appeared in the state trial court to determine the equitable distribution issue. Wife contended the bankruptcy court had already decided the issue of the agreement's validity, retained jurisdiction over the issue, and its decision as to the agreement's validity was final and binding on all parties and state courts. The trial court ruled, however, that the bankruptcy court's refusal to approve the agreement did not mean the agreement was invalid, and it scheduled an evidentiary hearing on the matter.

Before the trial court could rule on the matter, wife moved for an injunction in the bankruptcy court, seeking to prevent husband from proceeding with his request to approve the settlement agreement. On January 18, 1994, the bankruptcy court denied wife's request for an injunction. The bankruptcy court commented that "I see no reason why the state court cannot make a

determination as to coercion just as well as I can, and maybe better . . . and, furthermore, as to equitable distribution."

On January 31, 1994, the trial court determined the agreement was not the product of duress and incorporated the agreement's terms in a March 14, 1994 order.  On March 29, 1994, the trial court denied wife's motion to vacate or reconsider the order, despite her contention that the trial court lacked jurisdiction to litigate the equitable distribution issue because of the bankruptcy court's earlier refusal to validate the parties' agreement.

On April 28, 1994, the trial court granted husband's petition for enforcement of the order but denied his request for attorney's fees.  On May 20, 1994, the trial court modified its April 28, 1994 order and awarded husband $1,000 in attorney's fees.

II.

JURISDICTION

Wife argues that the trial court lacked jurisdiction to adjudicate the issue whether the parties' property settlement agreement was enforceable as the basis for equitable distribution and that, therefore, this Court must vacate the trial court's final order of March 14, 1994.  We disagree.

Our analysis is guided by federal bankruptcy law.

> When a bankruptcy petition is filed, most judicial
> actions against the debtor commenced before the filing
> of the petition are automatically stayed.  See 11

4

U.S.C. § 362(a)(1). The automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations. According to section 362(d), the bankruptcy court may lift the stay "for cause." Because the [United States] Code provides no definition of what constitutes "cause," courts must determine when discretionary relief is appropriate on a case-by-case basis. See In re MacDonald, 755 F.2d 715, 717 (9th Cir. 1985); 2 Collier on Bankruptcy § 362.07[1], at 362-68 to 69. (15th ed. 1992).

In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992); see In re Wilson, 85 B.R. 722, 724 (Bankr. E.D. Pa. 1988).

Accordingly, when wife filed her bankruptcy petition on May 27, 1993, she became a "debtor" under federal bankruptcy law. The filing of her petition mandated that no state court litigation concerning the parties' jointly held property could proceed without the bankruptcy court lifting its automatic stay.

Wife requested the bankruptcy court to lift its automatic stay, pursuant to 11 U.S.C. § 362(d),[1] which the bankruptcy court did on November 5, 1993.[2] Armed with the bankruptcy court's

_____

[1] 11 U.S.C. § 362(d)(1) provides in part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [11 U.S.C. § 362(a)], such as by terminating, annulling, modifying, or conditioning the stay--
    (1) for cause.

[2] The bankruptcy court's order stated:

Upon consideration of the Motion of Nancy J. Bogart for Relief from the Automatic Stay to permit litigation now pending to go forward, namely, Chancery Case No. 127306, Circuit Court, Fairfax County, Virginia, and by agreement of William Bogart, through counsel, and for good cause shown, it is by this Court

5

express permission, the parties continued their litigation to determine the equitable distribution matter in state trial court.

On November 22, 1993, the bankruptcy court issued another order, presumably on wife's request, on the matter of the parties' settlement agreement. The bankruptcy court denied wife's application to approve the agreement, stating it was not in the best interest of wife and her creditors. Despite the bankruptcy court's November 22, 1993 order and wife's protestations that the trial court lacked jurisdiction to approve the agreement, an equitable distribution hearing was scheduled. The trial court reasoned that the bankruptcy court order did not per se invalidate the agreement and that it would examine the agreement to see if wife signed it under duress or coercion, as she alleged.

While the bankruptcy court's November 22, 1993 order declining to approve the agreement may appear to have stripped the state trial court of jurisdiction over the matter, its lifting of the automatic stay <u>and</u> a January 18, 1994 hearing on wife's motion to enjoin the state proceedings reveal otherwise. First, as discussed above, the bankruptcy court's November 5,

> ORDERED that the automatic stay imposed by 11 U.S.C. sec. 362 be, and the same hereby is, vacated and extinguished with respect to the said above-identified litigation and said litigation shall be permitted to proceed to its conclusion, in the State Courts, with this Court retaining jurisdiction to determine the allowance of claims against the estate of Nancy J. Bogart as that estate shall be constituted pursuant to the Order of the State Courts.

6

1993 order lifted the automatic stay to allow all state court proceedings to continue. The bankruptcy court retained jurisdiction <u>only</u> over the allowance of claims against wife's estate, "as that estate shall be constituted pursuant to the Order of the State Courts." Furthermore, the bankruptcy court unequivocally stated on January 18, 1994, during the hearing of wife's request for injunction:

> I see no reason why the state court cannot make a determination as to coercion just as well as I can, and maybe better, since they deal with many more divorce cases, for which I am grateful, than I do, <u>and furthermore, as to equitable distribution</u>. So I want to advise you at this time that I'm denying your motion for an injunction.

(Emphasis added).

The trial court concluded that the agreement was enforceable and issued a final order on March 14, 1994, incorporating the terms of the agreement into the final decree of equitable distribution. On March 29, 1994, the trial court declined to reconsider its ruling. In fact, the trial court observed that

> [i]n accordance with state law . . . the agreement could and should be given effect unless procured by fraud or duress. I found no such fraud or duress . . . . [The bankruptcy court] and I are each applying the law of our own courts to the same document, and it is entirely possible to come out with opposite results.

We see no error in these proceedings.

Wife also asserts even if the bankruptcy court chose to allow the state trial court to decide the matters of the

7

agreement's validity and equitable distribution, it lacked authority to do so. We reject this argument. As one bankruptcy court noted, "[i]t is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'" Wilson, 85 B.R. at 727 (quoting MacDonald, 755 F.2d at 717); see Robbins, 964 F.2d at 344-45.

Under these principles, bankruptcy courts give state courts the right to determine and divide marital property, even after bankruptcy courts assume jurisdiction over a case. "In the normal case, the state court therefore defines what the debtor's rights are in the marital property and then the bankruptcy court exercises exclusive jurisdiction over the debtor's property which has become property of the bankruptcy estate." Hohenberg v. Hohenberg, 143 B.R. 480, 485 (Bankr. W.D. Tenn. 1992). As another bankruptcy court noted, "'[a] property settlement involves an inquiry into factors regularly considered by state courts in divorce proceedings, an inquiry which I would find is best left to the state courts.'" Robbins, 964 F.2d at 346 (quoting In re Heslar, 16 B.R. 329, 333 (Bankr. W.D. Mich. 1981)).

Although wife relies on Hohenberg to support her position, we interpret that decision differently. In Hohenberg, when lifting the stay to allow the divorce proceedings to proceed, the

8

bankruptcy court specifically retained "exclusive jurisdiction" over "entry of any consensual property settlement agreement." In the case before us, the bankruptcy court did not make such a reservation when initially lifting the stay. In fact, the bankruptcy court refused to enjoin the state court proceedings regarding the agreement after ruling it would not approve the agreement's terms. Nevertheless, the Hohenberg court explained:

> [t]o the extent that the state matrimonial court adjudicates an equitable distribution in favor of the nondebtor spouse, such award becomes a claim within the context of 11 U.S.C. § 101[(5)]. The nondebtor spouse's claim is an entitlement against the debtor's estate, and thus [the nondebtor spouse] becomes one of the general unsecured creditors of the estate.

Hohenberg, 143 B.R. at 488 (citation omitted). In this case, the record reveals that the claims involved creditors secured by the real estate and accommodated in the parties' agreement.

Finally, one scholar commented:

> In particular, a large majority of bankruptcy courts are willing to lift the stay to the extent of permitting the state court to determine the property rights of the debtor's spouse. This permits the equitable distribution proceedings to continue, subject of course to the exclusive authority of the bankruptcy court to determine the priority of the spouse's rights as against those of the other creditors.

Brett R. Turner, Equitable Distribution of Property § 3.06 at 66 (2d ed. 1994)(footnote omitted)(emphasis added).

We therefore hold that the trial court had jurisdiction to make its final determination of whether the agreement was

enforceable and to fashion its equitable distribution order.

III.

RULE 1:1

In this case, the trial court entered a final order on April 28, 1994, including an order denying husband attorney's fees. Husband filed a motion for reconsideration. On May 5, 1994, the trial court addressed a letter to counsel, explaining that husband's motion to reconsider was granted and that husband "will be awarded attorney's fees in the amount of one thousand dollars ($1,000.00), to be paid within thirty days of the date of this letter." The trial court requested husband to prepare an order based on the May 5, 1994 letter "for entry within ten days." The trial court's final order awarding attorney's fees was entered on May 20, 1994, twenty-two days after the original order.

Rule 1:1, a mandatory rule, states "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." (Emphasis added). See Rook v. Rook, 233 Va. 92, 94-95, 353 S.E.2d 756, 758 (1987). "At the expiration of that 21-day period, the trial court loses jurisdiction to disturb a final judgment, order, or decree except for the limited authority conferred by Code § 8.01-428." School Board v. Caudill Rowlett Scott, Inc., 237 Va. 550, 554, 379 S.E.2d 319, 321 (1989).

10

In this case, no exceptions to the twenty-one day rule applied.  The trial court's May 5, 1994 letter to counsel did not act as an official court order that was entered within the twenty-one day period.  See D'Alessandro v. Commonwealth, 15 Va. App. 163, 167, 423 S.E.2d 199, 201 (1992)(stating there must be an "entry, within the 21-day period after final judgment, of an order" vacating the final order); In re Dept. of Corrections, 222 Va. 454, 463-65, 281 S.E.2d 857, 862-63 (1981).  Nor was the court's May 20, 1994 order merely an order that did not alter the substantive provisions of a final judgment and that merely aided in the execution of the final judgment.  See Davidson v. Commonwealth, 246 Va. 168, 171, 432 S.E.2d 178, 179-80 (1993). Because the trial court lacked jurisdiction to enter its May 20, 1994 order, we vacate the order.

Accordingly, we affirm the trial court's March 14, 1994 equitable distribution order but reverse and vacate its May 20, 1994 order awarding husband attorney's fees.

Case No. 0645-94-4 affirmed.

Case No. 1020-94-4 reversed.

11